Date signed June 13, 2012



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MARYLAND
### Greenbelt Division

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| JOHNNIE GAIL GIPSON | * | Case No. 11-11550-PM |
| | * | Chapter 7 |
| Debtor | * | |
| ------------------------------------------------------------ | | |
| | * | |
| JOHNNIE GAIL GIPSON | * | Adversary Proceeding |
| | * | No. 11-00827 |
| Plaintiff | * | |
| v. | * | |
| | * | |
| U.S. DEPARTMENT OF EDUCATION; | * | |
| PENNSYLVANIA ASSISTANCE AGENCY; and | * | |
| ANTIOCH UNIVERSITY | * | |
| | * | |
| Defendants | * | |
| | * | |

## MEMORANDUM OF DECISION

Before the court is Debtor's *pro se* Complaint To Determine Dischargeability of Student Loans requesting discharge from her student loan obligations to defendants. Answers were filed by U.S. Department of Education ("DOE") and Pennsylvania Higher Education Assistance Agency ("PHEAA") (collectively, "Defendants"), and trial was held on May 17, 2012.[1] Upon consideration of the filed papers and pleadings, the trial exhibits and the trial testimony, the court renders the following findings of fact and conclusions of law:

---

[1]At the time of this writing, it does not appear that Debtor has effected service on Antioch University ("Antioch"), as Debtor filed an untimely request on May 10, 2012, just one week before trial, for issuance of a new summons to be served on Antioch. As such, Antioch did not respond to the Complaint. Debtor did not schedule Antioch as a creditor, so presumably it had no knowledge of the filing of the case.

Ver. `12.09

## BACKGROUND

Debtor, a 61-year old divorced female with no dependents, filed a bankruptcy case under Chapter 7, *pro se*, on January 28, 2011. Her case was uneventful, with the Chapter 7 Trustee issuing a Report of No Distribution on March 14, 2011, Debtor receiving her discharge, and the case being closed on May 10, 2011. On August 4, 2011, Debtor filed a motion to reopen her case in order to commence the subject adversary proceeding. The court granted this motion, and Debtor filed this adversary proceeding October 14, 2011. Defendants filed motions for summary judgment that the court denied on April 19, 2012, stating that, "Given the relevant inquiry set out in the governing case in this Circuit, *In re Frushour*, 433 F.3d 393 (CA4 2005) ("*Frushour*"), and the record before it, the court finds that this matter is not susceptible to determination on summary judgment." The proceeding came to trial May 17, 2012.

Debtor and Defendants prefiled their exhibits, all of which were admitted into evidence at trial without objection. Defendants' exhibits include interrogatories served on Debtor, and Debtor's answers thereto. The only witness at trial was Debtor, who self-directed her own testimony and was cross-examined by Defendants. The court finds that Debtor's testimony did not significantly change the evidence adduced from the trial exhibits and the parties' filed papers and pleadings.

Debtor's Schedules reflect that she has been employed by Prince George's County Public Schools for 19 years, in the occupation of "education," with current gross monthly income of $900.00; monthly expenses of $894 plus a monthly car loan payment of $485; and two vehicles - a 2004 Kia Optima that is free and clear of liens and, as reflected in her Amended Statement of Intention, a 2009 Saturn Sky that is subject to a loan having a balance of $23,000, which she intends to retain and pay pursuant to the contract.

Debtor's Statement of Financial Affairs reflects that her gross income for 2009 was $51,091, that her gross income for 2010 was $16,000, and that her gross income from January 1, 2011, to the petition date, January 28, 2011, was $200. Debtor submitted an exhibit consisting of her Social Security Statement from the Social Security Administration dated March 17, 2011, reflecting taxed social security earnings of $53,291 in 2006; $28,253 in 2007; $43,847 in 2008; $51,090 in 2009; and $25,820 in 2010. She also submitted an exhibit stating total gross income of $27,487 for 2011.

PHEAA submitted an exhibit consisting of interrogatories propounded on Debtor and her answers thereto, including the following:

> [**Interrogatory No.**] **5.** If you contend that an ongoing medical condition . . . forms a basis, in whole or in part, of your claim of hardship, then identify all physicians, therapists, psychiatrists, psychologists and mental and physical health care professionals ("medical personnel") who have examined or have treated you with

Ver. `12.00

the described conditions, and for each medical personnel, state the dates of examinations and/or treatment and describe the nature of the examination and/or treatment.
**[Answer]**  Both right and left knees have osteoporosis arthritis for many years and the aging process it [sic] has caused my knees to deteriorate. This causes constant pain and mobility [sic] very difficult.

**[Interrogatory No.] 8.**  For each job or position of employment you have held in the last five (5) years, including your current job(s), if any, provide the following information:
    A. The dates you have worked for such employer.
    B. Identify each employer by name, address and telephone number.
    C. Describe in detail your position and the duties you performed for each such employer.
. . .

**[Answer]**  Since 2008, Adjunct professor at Prince George's Community College, 301 Largo MD, 20774/301-336-6000. Teach Intro Sociology 1010 and Criminology 2330
1999-Present - Various positions, most recently Substitute teacher for Prince George's County Public Schools, 14201 School Lane, Upper Marlboro, MD 20772 301-952-6023, Assigned to different schools to fill in for teachers that are absent for the day or longer.

I sit most of the day on all my employment positions.
. . .

**[Interrogatory No.] 13.**  Itemize the sources and amount of income which you expect to receive and expenses which you expect to incur over the next twelve months . . . .
**[Answer]**  TOTAL MONTHLY NET INCOME FROM ALL SOURCES WHATSOEVER $1,965.29 ($302.00 deficit) . . . .

**[Interrogatory No.] 15.**  With respect to each school you attended after high school, including any school you are presently attending, provide the following information:
    A. The name and address of each school.
    B. The dates you were enrolled or have been enrolled at such school.
    C. The concentration of courses or major field(s) of study at such school.
    D. Whether you attended or are attending as a full-time or part-time student.
    E. Nature of any degrees you received or will receive from such school.
    F. Source of payment of tuition at such school.
    G. If you withdrew prior to graduation, state the date of such withdrawal and the attempts if any, you made to notify defendant or any other lender, including the date of such attempts.
**[Answer]**
    [A.]Delta College, 1961 Delta Rd, University Center, MI 48710
    MSU, 150 Administrations Bldg. East Lansing, MI
    Howard University School of Law, 2400 6th Street NW, WDC 20059
    [B.] Delta 76-76 MSU 76-78 Howard 84-87
    [C.] Howard - Law
    [D.] Full time all three colleges
    [E.] AA BS JD

    [F.] Law school was student loans, I do not remember the others source [sic].
Ver. `12.09    [G.] Did not withdraw

DOE's interrogatories and Debtor's answers include the following:

**[Interrogatory No.] 13**. What is the condition of your health? If other than good, please explain.
**[Answer]**  good except for osteoporosis in both knees.

**[Interrogatory No.] 29.**
>	a. Did you utilize the placement office facilities upon your graduation/withdrawal from school?
>		b. Describe your efforts at securing employment upon leaving school.

**[Answer] a)** NO **b)** Caregiver for son, see complaint.

In a February 29, 2012 deposition of Debtor conducted by Defendants' counsel, the following exchanges took place, with Debtor being under oath:

**Page 7, lines 2-21**
Q. Have you ever been licensed to practice law?
A. Many years ago.
Q. Where were you licensed?
A. In Pennsylvania.
Q. Have you ever practiced law?
A. In Georgia.
Q. When was that?
A. That was in '89, '90. I was not an attorney, but a case analyst. I prepared the cases for trial.
Q. Where did you work?
A. I was in the District Attorney's - Prosecuting Attorney's Office.
Q. Were you there for one year?
A. Uh-huh.
Q. Is that a yes?
A. I'm sorry. Yes.
Q. Why did you leave?
A. I did not like it.
Q. Did you ever practice law anywhere else?
A. No.

**Page 10, line 25 through Page 24, line 21**
Q. Did you apply to any of the neighboring county school systems to be a substitute [teacher]?
A. No.
Q. Why not?
A. It's too far to drive. Too much gas.
Q. Approximately how much do you earn? Is it per day as a substitute?
A. Yes, it's per day. It's $100 per day if you work every day – well, whether you work every day or not it's $100 per day.
Q. What are some of the close school systems around where you live other than Prince george's County?
A. There are none closer than Prince George's County.
Q. Anne Arundel County, for instance?
A. That's too far.
Q. So are you saying it would be more than $100 worth of gas for you to drive from Prince George's County to Anne Arundel County every day?
A. No, it would not be $100 a day worth of gas to drive back adn forth to Anne Arundel County, no.
Q. It's not worth it?

A. Well, working at schools that are much further away - - let's say I go to Croom High School or I go to Douglass High School, I would use a tank and a half, two tanks per week, adn that's just tyoo much money in gas.
Q. How much does it cost you to fill up your gas tank?
A. Well right now it's over $40 because gas is 3.69, 3.79 per gallon for regular.
Q. So you have not applied as a substitute teacher at the Anne Arundel County school system?
A. No.
Q. What about the Howard County school system?
A. No. It's too far.
Q. What about the Baltimore County school system?
A. Too far.
Q. What about the Baltimore City school system?
A. Too far.
. . .
Q. So your other position is an adjunct professor at Prince George's County Community College?
A. Yes.
Q. How often do you work there?
A. Well, it depends on how many courses you're assigned. This semester I have one course. It is on line, and I teach at my computer on the Internet.
. . .
Q. Did you submit an application to become an adjunct professor at any of the neighboring community colleges?
A. I'm in the process of doing that now.
Q. My question is have you submitted an application to become an adjunct professor at any of the neighboring community colleges?
A. I applied at Montgomery Community College once.
Q. When was that?
A. This is 2012. Maybe 2006 or '07. That may not be the exact dates, but somewhere in that area.
Q. Were you selected?
A. No.
Q. Any other community colleges you applied to?
A. No, because I learned from that one that I lacked experience, so that's why I was fortunate enough to be employed at Prince George's County Community College to obtain experience and more skills.
Q. So how long have you been at Prince George's Community College?
A. Since 2007, I believe.
Q. To 2012?
A. Current, yes.
. . .
Q. Do you have experience now in sociology?
A. Yes. In teaching college level sociology, yes.
Q. Do you have experience in teaching college level criminology?
A. Yes.
Q. What about math skills?
A. I don't teach that anymore.
Q. What about GED prep?
A. I don't teach that anymore.
Q. So you have not applied to teach criminology at Anne Arundel Community College ever?
A. No. As I stated, I'm in the process of applying to different colleges now currently       as we speak.
Q. But as of today you have not applied to teach college courses at Anne Arundel Community College, correct?

A. No, I have not.
Q. What about Howard County Community College?
A. No, I have not.
Q. Baltimore County Community College?
A. No, I have not.
. . .
Q. I read that you had some kind of business, and I looked at your tax returns, and you indicated there was a business loss.
A. That was tutoring. I'm not doing that now.
Q. Tell me about when you were doing tutoring.
A. What do you want to know?
Q. What years were you doing it?
A. A long time. I got tired of doing it. I don't like doing it anymore. I quit as of last year.
. . .
Q. Have you ever practiced law in the 2000s?
A. No.
Q. Why not?
A. I'm not barred.
Q. You were licensed in Pennsylvania; correct?
A. Yes.
Q. And you know you can just pay the fee and get your license again; right?
A. I have no desire to practice law.
Q. Why not?
A. Well, I was just working with child abuse and domestic violence and just got turned off.
Q. There are other areas of law. You understand that; right?
A. Yes.
Q. Have you ever thought about doing legal support anywhere.
A. That's right. I forgot. I applied for several paralegal positions, and they told me I needed to be certified in it.
Q. That was in the 2000s?
A. No. That was in the '90's.
Q. Not in the 2000s, though?
A. Maybe. I know it was in the late '90's. It could have spilled over into 2000. I'm not sure.
Q. Ms. Gipson, what I'm getting at is that you have a law degree; right?
A. Yes.
Q. Having a position in the law will give you more money. You know that, don't you?
A. Yes, if you can find one.
Q. So why haven't you practiced law? I don't understand why you have not done that.
A. I'm not interested in being an attorney. I do not consider myself an attorney. I am an educator.

**DISCUSSION**

Debtor's entitlement to a discharge from her student loan obligations to Defendants is governed by 11 U.S.C. §523(a)(8), which provides in pertinent part that a debtor does not receive a discharge from student loan obligations such as those involved in this proceeding "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the

debtor . . . ." The standard of "undue hardship" is not defined under Title 11.  As the court noted in its Order on Defendants' motions for summary judgment, the court's application of 11 U.S.C. §523(a)(8) in this dispute is governed by *Frushour*, a decision that the Fourth Circuit has since followed in the cases of In re *Mosko*, 515 F.3d 319 (CA4 2008), and *In re Spence*, 541 F.3d 538 (CA4 2008).[2]  In *Frushour*, the Fourth Circuit adopted 'the *Brunner* test,' referring to the case of *Brunner v. N.Y. State Higher Educ. Servs. Corp.,* 46 B.R. 752 (SD NY 1985), *aff'd,* 831 F.2d 395 (CA2 1987), which the Fourth Circuit summarized as follows:

> The *Brunner* test requires [Debtor] to show that (1) she cannot maintain a minimal standard of living and repay the loans, (2) additional circumstances exist that illustrate she will not be able to repay the loans for a substantial part of the repayment period, and (3) she attempted to repay the loans in good faith.

*Frushour*, 433 F.3d at 398.

The court comes away from trial with two distinct impressions of Debtor: first, she appeared to be energetic and in good health; and second, she is an intelligent, articulate woman who has acquired several useful skill sets and significant experience applying them.  As such, her condition is in sharp contrast to the bleak situation of which she writes in her pleadings and papers, describing herself as being "at the end of her work years," *Complaint*, Part III, too old and decrepit[3] to continue working. While Debtor argues that her age and problems with her knees preclude employment that would enable her to repay her loans for a substantial part of the repayment period, Debtor's condition does not rise to the level of hopelessness[4] found in the hardship discharge cases based on medical condition that the court has surveyed.  *See, e.g., In re Todd*, 2012 WL 1862341 (BC Md. 2012) (loans discharged for 63-year old debtor with Asperger's syndrome since early childhood, Post Traumatic Stress Disorder resulting from subdural hematoma, and osteoporosis); *In re Barrett*, 487 F.3d 353 (CA6 2007) (loans discharged for debtor diagnosed and treated for avascular necrosis and stage IV Hodgkin's lymphoma requiring multiple

---

[2] Debtor argues that the court is not compelled to apply the *Brunner* test and instead should apply a test adopted by the Eighth Circuit. The court disagrees and reiterates that, being in the Fourth Circuit, this court is bound by *Frushour* and the *Brunner* test adopted therein.

[3] Debtor describes herself as suffering from deteriorating knee joints, osteoporosis in her knees, and limited mobility, but otherwise provided no expert or documentary explanation of her condition whatsoever, no physical evidence of disability, and no specific showing as to how this condition adversely affects her ability to work in the fields for which she is qualified. Moreover, Debtor states that she sits while performing her teaching duties. For these reasons, the court is unable to find any causal relationship between her alleged medical condition and inability to repay her student loans for a substantial part of the repayment period.

[4] In describing the second prong of the *Brunner* test, the Fourth Circuit stated, "The second factor is, therefore, 'a demanding requirement,' *Brightful* 267 F.3d [324,] at 328 [CA3 2001], and necessitates that a 'certainty of hopelessness' exists that the debtor will not be able to repay the student loans, *id.* (internal quotations marks omitted) . . . ." *Frushour* at 401.

future surgeries); *In re Larson*, 426 B.R. 782 (BC ND Ill. 2010) (loans discharged for 58 year-old debtor suffering from diabetes, total blindness caused by diabetes, medication for diabetes, medication for heart condition that required quadruple bypass, medication for kidney failure that required kidney transplant).

      The court quotes at length the foregoing passages from Debtor's answers to interrogatories and deposition testimony as they demonstrate the central reason why the court cannot find that Debtor has met her burden under the second prong of the *Brunner* test: rather than showing the existence of "additional circumstances illustrating that she will not be able to repay the loans for a substantial part of the repayment period," *Frushour* at 398, Debtor has shown the existence of several income opportunities for which she is qualified but which she either has not pursued or is still in the process of pursuing. Debtor states that, "The plan is to draw social security benefits, teach one class three semesters per year at [Prince George's County Community College] for $2,150.00 per course and move into an adult living community with a sliding pay scale . . . ." *See* Complaint, Part III. This statement, along with Debtor's admissions as to employment options she has not exhausted because she does not "like" such employment, as well as Debtor's significantly higher income in recent years[5], persuades the court that Debtor's current income level is of her own choosing. *See Frushour* at 401 ("Having a low-paying job, however, does not in itself prove undue hardship, especially where the debtor is satisfied with the job, has not actively sought higher-paying employment, and has earned a larger income in previous jobs."). In short, Debtor has not shown <u>inability</u> to make payments on these loans.

      The court's finding that Debtor's evidence does not satisfy the second prong of the *Brunner* test is enough to conclude that judgment must be entered against Debtor, as the three prongs of the test are in the conjunctive. Nevertheless, the court also concludes that the same facts on which the court finds against Debtor on the second prong of the *Brunner* test show lack of the good faith required under the third prong of the test: she has been content to remain at her current level of employment, and therefore her current level of income, while acknowledging unexplored options for increasing it. *See Mosko* at 324 ("Good faith consists of the debtor's 'efforts *to obtain employment, maximize income*, and minimize expenses,'" *citing O'Hearn v. Educ. Credit Mgmt. Corp.*, 339 F.3d 559, 564 (CA7 2003) (internal quotation marks omitted) (emphasis added).

      Debtor is to be commended for making the payments she has made in the past, and her pending efforts to obtain additional teaching positions suggest that she has not completely abandoned all attempts to repay her loans . The court notes Defendants' several invitations over the years for Debtor to participate in an Income Contingent Repayment Plan, which Debtor has rejected based on the possibility of adverse tax consequences that will befall her at the age of 86 as

---

[5] Debtor's exhibit consisting of her Social Security Statement from the Social Security Administration dated March 17, 2011, reflects taxed social security earnings of $53,291 in 2006; $43,847 in 2008; and $51,090 in 2009.

to any balance that is forgiven after reaching the maximum repayment period of twenty-five years. That possibility should not govern Debtor's pursuit of the gainful employment for which she is qualified, or the rewards of such employment.

      For all of these reasons, the court rules in favor of Defendants as to the nondischargeability of the subject debts. Debtor also requested that the court determine the amounts owed to Defendants. Debtor expressed uncertainty over the amounts claimed but introduced no evidence on the issue. Moreover, this being a 'no-asset' bankruptcy case, proofs of claim were not required of Defendants and this court has no basis for adjudicating same. Therefore, the court refrains from ruling on this aspect of Debtor's Complaint without prejudice to Debtor's right to contest same in a nonbankruptcy forum of competent jurisdiction.

      An appropriate order will be entered.

cc:    Debtor
       Defendants' Counsel
       Antioch University, 888 Dayton Street, #102, Yellow Springs, Ohio 45387
       Chapter 7 Trustee
       United States Trustee

END OF DECISION